Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-5101
Telephone: (516) 303-0552

United States District Court
Southern District of New York                                    1:20-cv-06883

| | |
|---|---|
| Anjelika Angeles, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>GlaxoSmithKline Consumer Healthcare L.L.C.,<br><br>Defendant | Class Action Complaint |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    GlaxoSmithKline Consumer Healthcare L.L.C.   ("defendant") manufactures, distributes, markets, labels and sells fiber supplement products under its Benefiber brand ("Product").

2.    The Product is available to consumers from retail and online stores of third-parties and is sold in various sizes, which is a powder that is dissolved into a drink.

3.    The representations – on the labels and on accompanying advertising materials – include "100% Natural," "Prebiotic Fiber Supplement," "Helps You Feel Fuller Longer – Clinically Proven" and "Nourishes Good Bacteria."



4.    The representations that the Product is "100% Natural" are false, deceptive and misleading.

5.    Reasonable consumers are interested in the production processes which converts raw ingredients to a finished food product.

6.    understand the term "natural" to describe a food item manufactured without additives

7.    Even though the Product contains a single ingredient – "Wheat dextrin" – the production process through which this is converted into Benefiber is the antithesis of what consumers associate with "natural" and especially "100% Natural."

8.    The production of Benefiber entails multiple steps which involves hydrochloric acid,

added enzymes and a highly controlled selection of biological properties that resist digestion, boost fiber content, promotes solubility (as the powder is dissolved in water), decreases viscosity and adds sweetness (which prevents needing to add sugar).

9.    This complex process converts digestible, wheat starch – which has no fiber – into non-digestible, wheat dextrin which is 85% fiber.

10.    Reasonable consumers find production processes which Benefiber uses to be inconsistent with how they understand the terms "natural" and "100% natural."

11.    The front label and accompanying advertising material represent that the Product is clinically proven to "help[s] you feel full longer" and "curb cravings."

12.    However, these claims are not supported by competent, reliable and independent scientific evidence.

13.    The results relied upon in support of these claims are inconsistent with reasonable scientific studies and are not relevant to those who are most likely to purchase the Products.

14.    Defendant's studies focus on different population groups and the data measured outcomes and types of fiber which bear no relation to defendant's health and satiety-inducing claims.

15.    Consumers seek products which can help them feel fuller longer to reduce calorie consumption and lose weight, which is why Defendant's claims are material.

16.    The claims that the Product "nourishes good bacteria" is false, deceptive and misleading because the fiber powder is unable to nourish any bacteria after it is absorbed into the body.

17.    Further, the Product is unable to specifically target "good bacteria" – understood as bacteria that will have a salutary effect on a person's health or well-being.

18.     Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

19.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

20.     The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

21.     Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

22.     As a result of the false and misleading labeling, the Product is an sold at a premium price, slightly less than $1.00 per ounce, i.e., a 25.6 oz bottle is sold for $22.99[1], excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

23.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

24.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

25.     Plaintiff Anjelika Angeles is a citizen of New York.

26.     Defendant GlaxoSmithKline Consumer Healthcare L.L.C., is a Pennsylvania corporation with a principal place of business in Warren, Somerset County, New Jersey and is a

---

[1] https://www.bjs.com/product/benefiber-fiber-supplement-powder-256-oz/3000000000000153814

citizen of New Jersey.

27.    "Minimal diversity" exists because plaintiff Anjelika Angeles and defendant are citizens of different states.

28.    Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs.

29.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of Plaintiff Peter Figueroa to purchase the Product and the misleading representations and/or their recognition as such.

30.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

31.    Plaintiff is a citizen of New York, New York County, New York.

32.    Defendant GlaxoSmithKline Consumer Healthcare L.L.C. is a Pennsylvania corporation with a principal place of business in Warren, New Jersey, Somerset County and upon information and belief, at least one member of defendant is not a citizen of New York.

33.    Defendant sells over the counter consumer healthcare products nationwide, ranging from ointments to dietary supplements.

34.    During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal and household use in reliance on the representations the Product was 100% natural, understood as described herein, and was clinically proven to help curb cravings and feel fuller longer.

35.    Plaintiff purchased the Product on one or more occasions during the relevant period,

including in and/or around March 2020, at store(s) which may include Rite Aid, 3539 Broadway, New York, NY 10031.

36.    Plaintiff bought the Product at or exceeding the above-referenced prices because she liked the product for its intended use, expected it would be 100% natural and have the effects the label and advertising claimed and which defendant touted as clinically proven.

37.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

38.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

39.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

40.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components and it is able to adequately support its satiety claims of curbing cravings and help to feel fuller longer.

<u>Class Allegations</u>

41.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

42.    Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

43.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

44.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

6

45.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

46.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

47.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

48.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

49.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL"), §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

50.    Plaintiff incorporates by reference all preceding paragraphs.

51.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

52.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

53.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

54.    Defendant misrepresented the ability of the Product to cause satiety and curb cravings, which would lead to reduction in caloric consumption, by giving consumers and plaintiff the false belief that its claims were clinically proven, understood to mean they were supported by competent and reliable scientific evidence, when in fact,  no such support existed and instead the

7

support proffered was not germane to the label and advertising claims.

55.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

56.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

57.    Plaintiff incorporates by reference all preceding paragraphs.

58.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

59.    Defendant misrepresented the ability of the Product to cause satiety and curb cravings, which would lead to reduction in caloric consumption, by giving consumers and plaintiff the false belief that its claims were clinically proven, understood to mean they were supported by competent and reliable scientific evidence, when in fact, no such support existed and instead the support proffered was not germane to the label and advertising claims.

60.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

61.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

62.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

63.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

64.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

67.    Defendant misrepresented the ability of the Product to cause satiety and curb cravings, which would lead to reduction in caloric consumption, by giving consumers and plaintiff the false belief that its claims were clinically proven, understood to mean they were supported by competent and reliable scientific evidence, when in fact, no such support existed and instead the support proffered was not germane to the label and advertising claims.

68.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

69.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

70.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

71.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

72.    The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

73.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

74.    Plaintiff incorporates by reference all preceding paragraphs.

75.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

76.    Defendant misrepresented the ability of the Product to cause satiety and curb cravings, which would lead to reduction in caloric consumption, by giving consumers and plaintiff the false belief that its claims were clinically proven, understood to mean they were supported by competent and reliable scientific evidence, when in fact,  no such support existed and instead the support proffered was not germane to the label and advertising claims.

77.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and represent that it had competent and clinically proven, relevant support for its claims when it knew such statements were neither true nor accurate and misled consumers.

78.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

79.    Plaintiff incorporates by reference all preceding paragraphs.

80.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 25, 2020

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan
                                        Spencer Sheehan
                                        60 Cuttermill Rd Ste 409
                                        Great Neck NY 11021-3104
                                        Tel: (516) 303-0552
                                        Fax: (516) 234-7800
                                        *spencer@spencersheehan.com*
                                        E.D.N.Y. # SS-8533
                                        S.D.N.Y. # SS-2056

11

1:20-cv-06883
United States District Court
Southern District of New York

Anjelika Angeles, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

GlaxoSmithKline Consumer Healthcare L.L.C.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: August 25, 2020

/s/ Spencer Sheehan
Spencer Sheehan